1

2

3

4                                          *E-FILED - 10/5/10*

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12   MARTIN D. ROYAL,                    )      No. C 08-5628 RMW (PR)
                                         )
13                Petitioner,            )
                                         )      ORDER DENYING PETITION FOR WRIT
14        vs.                            )      OF HABEAS CORPUS; DENYING
                                         )      CERTIFICATE OF APPEALABILITY
15   M. MARTEL, Warden,                  )
                                         )
16                Respondent.            )
     _____ )
17

18        Petitioner, a California prisoner proceeding pro se, filed a writ of habeas corpus pursuant

19   to 28 U.S.C. § 2254.  Respondent filed an answer and a supporting memorandum of points and

20   authorities addressing the merits of the petition and petitioner filed a traverse.  Having reviewed

21   the papers and the underlying record, the court concludes that petitioner is not entitled to habeas

22   corpus relief and denies the petition.

23                              **FACTUAL BACKGROUND**

24        Defendant's daughter, "M," lived with her mother, stepfather, and their children until

25   1994, when she was 12-years old.  (People v. Royal, No. A109216 (Cal. App. 1 Dist. Aug. 15,

26   2006), Pet. Ex. A at 2.)  In 1994, M went to live with her father in New York.  (Id.)  M's mother

27   drove M to Kansas City to meet up with defendant, who drove a big rig.  (Id.)  The first night,

28   defendant and M went to sleep in the back of the truck and defendant molested M and then

1   apologized.  (Id.)

2       M testified that defendant molested her a few more times while living in New York with

3   his wife, Mary.  (Id.)  M testified that she moved to Georgia with Mary and defendant and

4   defendant would molest her while the other children were at school and Mary was at work.  (Id.)

5   M testified that having sex with defendant made her feel "disgusted."  (Id.)  M told Mary about

6   the molestations but Mary "never listened."  (Id. at 3.)  M always told defendant to stop but he

7   never did.  (Id.)  M did not tell her mother because she thought her mother would be

8   disappointed.  (Id.)  M did not tell anyone or the police because she did not think anyone cared

9   or could help.  (Id.)

10      At some point, M and defendant moved to a new apartment together because defendant

11  and Mary were not getting along.  (Id.)  M thought that the only person who cared about her was

12  defendant.  (Id.)  Defendant slept with M every night in their new apartment and he never let her

13  wear any clothes to bed.  (Id.)  M and defendant had sex every day, including oral and anal sex.

14  (Id.)  M did not go to school because defendant was afraid that she would meet someone else.

15  (Id.)

16      When M was 14, she and defendant lived in Georgia where he first gave her drugs.  (Id.

17  at 4.)  M used marijuana and cocaine with defendant which he obtained from a co-worker.  (Id.)

18  In 1998, defendant and M lived in Napa with defendant's father for a few months.  (Id.)  Then

19  they moved into a one-bedroom trailer together.  (Id.)  M was able to attend school just a few

20  days a week.  (Id.)  When defendant would get mad at M, he would throw remote controls at her.

21  (Id.)  At one point, defendant also placed a freshly lit pipe on M's leg and left a mark.  (Id. at 5.)

22  Another time, defendant picked up the bed while M was on it and threw it over.  (Id.)

23      Defendant would not let M leave the house but expected her to do all the household

24  chores and M felt like "his wife."  (Id. at 4.)  While in Napa, M and defendant used a lot of

25  drugs.  (Id.)  M testified that while in Napa, she and defendant would have sex every night and

26  every morning.  (Id.)  M stated that she never wanted to have sex with defendant but felt she had

27  no choice because no one listened to her.  (Id. at 5.)

28      In September 1999, M was talking to Lisa Ramirez, defendant's father's sister-in-law,

1   who told M that she knew what was happening.  (Id. at 6.)  M started to cry and told Ramirez all

2   about the molestations.  (Id.)  That night, defendant's father confronted defendant about the

3   abuse and took M to stay with him.  (Id.)  On September 19, 1999, M was packing her things

4   because her mother and stepfather were coming to pick her up.  (Id.)  Defendant took her into the

5   back room where they had sex and defendant told her it would be the last time that she saw

6   "dad" again and that he would come for her on her 18th birthday.  (Id.)

7         At trial, M introduced a strip of photographs including one she described as depicting

8   herself giving oral sex to defendant.  (Id.)  At the time of the photographs, M was 16 years old.

9   (Id.)  One of the officers who investigated the case testified that when M showed him the

10  photographs, she told him they were taken after she and defendant "had been up for three days

11  and nights doing an eight ball of crystal meth and said they took the photo, that was the photo

12  booth at about 1:00 a.m. at a beach in Savannah . . . ."  (Id. at 7.)

13        Defendant's work supervisor testified that he never suspected that defendant was using

14  methamphetamine and that when he visited defendant's house, M seemed happy.  (Id.)

15  Defendant's father testified that M was a "chronic liar."  (Id.)  Ramirez testified that she believed

16  M was a "compulsive liar."  (Id.)  Mary testified that M had told her defendant touched her

17  inappropriately, but when Mary asked M about it afterward, M stated that she was talking about

18  her step-father and not her father.  (Id.)  Mary also testified that M often walked around with

19  little clothes on and Mary constantly had to tell her to put clothes on.  (Id.)  Bill White, an

20  investigator for the prosecutor, testified that when he interviewed Mary in Georgia, she stated

21  that she did not like M and she believed defendant was having sex with M in 1996 or 1997.  (Id.)

22  She even tried to "catch them" at one time but was unsuccessful.  (Id. at 8.)  At trial, Mary

23  denied this.  (Id.)

24        M's mother, Melia, testified that when M would visit her, defendant would call 4 or 5

25  times a day and seemed too "possessive."  (Id.)  When defendant called Melia to ask her to come

26  and get M, he explained that he and M "ended up in bed together."  (Id.)  M told Melia that she

27  was afraid if she were not there to care for defendant, he would "hurt himself."  (Id.)  When at

28  Melia's, defendant would call M several times a day and Melia finally had to tell him to stop

1    calling and eventually obtained a restraining order.  (Id.)

2        On November 23, 2004, petitioner was convicted of nine counts of forcible rape, nine

3    counts of forcible oral copulation, nine counts of anal or genital penetration by foreign object,

4    force and violence, nine counts of incest, and nine counts of sale of a controlled substance to a

5    minor.  (Clerks Transcript ("CT"), Ex. 1, Vol. 2 at 397-98.)  Petitioner was sentenced to 76 years

6    in state prison.  (Id. at 399.)

7        Petitioner appealed and the California Court of Appeal affirmed the judgment on August

8    15, 2006.  (Resp., Ex. 6.)  The California Supreme Court denied review on September 5, 2006.

9    (Resp., Ex. 7.)  Petitioner's state habeas petitions were denied by the Napa County Superior

10   Court on April 27, 2007, by the California Court of Appeal on May 29, 2008, and by the

11   California Supreme Court on November 19, 2008.  Petitioner filed the instant federal action on

12   December 17, 2008.

**LEGAL CLAIMS**

13

14       Petitioner asserts the following claims for habeas relief: (1) prosecutorial misconduct;

15   (2) juror misconduct; (3) ineffective assistance of trial counsel for (a) failing to investigate,

16   (b) failing to excuse a juror for cause, and (c) failing to investigate a conflict of interest;

17   (4) denial of the substitution of counsel; (5) ineffective assistance of appellate counsel;

18   (6) improper admission of uncharged sexual misconduct in violation of due process combined

19   with jury instruction constituted error;[1] (7) insufficient evidence of duress; and (8) cumulative

20   error.

**DISCUSSION**

21

22   **A.    Standard of Review**

23       Because the instant petition was filed after April 24, 1996, it is governed by the

24   Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposes significant

25

26       [1]  In the court's order to show cause, it sua sponte combined Claims 6 & 7, entitled
     "Admission of Uncharged Sexual Misconduct Violates Due Process," and "Exclusion of
27   Evidence was Compelled by Due Process."  In petitioner's traverse, he combines these two
     claims with Claim 8, "Jury Instruction Violated Due Process."  After reviewing Claims 6, 7, & 8,
28   the court agrees that the claims should all be addressed as one.

1   restrictions on the scope of federal habeas corpus proceedings.  Under the AEDPA, a federal

2   court may not grant habeas relief with respect to a state court proceeding unless the state court's

3   ruling was "contrary to, or involved an unreasonable application of, clearly established federal

4   law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was

5   based on an unreasonable determination of the facts in light of the evidence presented in the

6   State court proceeding."  28 U.S.C. § 2254(d)(2).

7       "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

8   court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

9   law or if the state court decides a case differently than [the] Court has on a set of materially

10  indistinguishable facts."  Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the

11  'unreasonable application clause,' a federal habeas court may grant the writ if the state court

12  identifies the correct governing legal principle from [the] Court's decisions but unreasonably

13  applies that principle to the facts of the prisoner's case."  Id.  "[A] federal habeas court may not

14  issue the writ simply because the court concludes in its independent judgment that the relevant

15  state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

16  that application must also be unreasonable."  Id. at 411.

17      "[A] federal habeas court making the 'unreasonable application' inquiry should ask

18  whether the state court's application of clearly established federal law was 'objectively

19  unreasonable.'"  Id. at 409.  In examining whether the state court decision was objectively

20  unreasonable, the inquiry may require analysis of the state court's method as well as its result.

21  Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).  The "objectively unreasonable"

22  standard does not equate to "clear error" because "[t]hese two standards . . . are not the same.

23  The gloss of clear error fails to give proper deference to state courts by conflating error (even

24  clear error) with unreasonableness."  Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

25      A federal habeas court may grant the writ if it concludes that the state court's

26  adjudication of the claim "resulted in a decision that was based on an unreasonable

27  determination of the facts in light of the evidence presented in the State court proceeding."  28

28  U.S.C. § 2254(d)(2).  The court must presume correct any determination of a factual issue made

1 | by a state court unless the petitioner rebuts the presumption of correctness by clear and

2 | convincing evidence.  28 U.S.C. § 2254(e)(1).

3 | **B.**   **Petitioner's Claims**

4 | 1.   <u>Prosecutorial Misconduct</u>

5 | After the preliminary hearing but prior to trial, Mervin Lernhart was appointed to be

6 | petitioner's counsel.  (Pet. Memo at 1.)  After the prosecutor submitted his witness list, Lernhart

7 | discovered that he had a conflict of interest with one of the witnesses (<u>id.</u> at 10) and moved to

8 | withdraw from representation.  (<u>Id.</u> at 2.)  Plaintiff claims that after Lernhart withdrew from

9 | representation, the witness with whom he had a conflict never appeared on any other prosecution

10 | lists nor was he/she called to testify at trial.  (<u>Id.</u> at 10.)  Plaintiff alleges that the prosecutor

11 | intentionally put this witness' name on the list, knowing that Lernhart would have to withdraw

12 | from the case because the prosecutor's case was threatened by Lernhart's vigorous investigation.

13 | (<u>Id.</u>)

14 | The California Supreme Court summarily denied Petitioner's claim.

15 | Prosecutorial misconduct is cognizable in federal habeas corpus.  The appropriate

16 | standard of review is the narrow one of due process and not the broad exercise of supervisory

17 | power.  <u>See</u> <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986).  A defendant's due process rights

18 | are violated when a prosecutor's misconduct renders a trial "fundamentally unfair."  <u>See</u> <u>id.</u>;

19 | <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of

20 | alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the

21 | prosecutor").

22 | Petitioner's claim is supported by nothing more than speculation that the prosecutor

23 | interfered with "petitioner's right to counsel."  (Traverse at 3.)  This claim must be rejected

24 | because it is well-established that "[c]onclusory allegations which are not supported by a

25 | statement of specific facts do not warrant habeas relief."  <u>James v. Borg</u>, 24 F.3d 20, 26 (9th Cir.

26 | 1995).  Accordingly, the state court's rejection of this claim cannot be said to be objectively

27 | unreasonable.  <u>See</u> 28 U.S.C. § 2254(d).

28 | 2.   <u>Juror Misconduct</u>

1    During jury selection, one juror admitted that she was "familiar" with the district

2    attorney's investigator, Bill Francis.  (Pet. Memo at 3.)  After she responded that she could be

3    fair and impartial, she was selected as an alternate.  (Id., RT 2311.)  When the case was

4    submitted to the jury, one of the jurors became ill and was excused.  (Id.)  Petitioner objected to

5    the alternate and the parties stipulated to an eleven-member jury.  (Id.)  Petitioner claims that the

6    trial court should have held a hearing to determine whether there was good cause to excuse this

7    alternate as a biased juror rather than allow the parties to stipulate to an eleven-member jury.

8            The California Supreme Court summarily denied Petitioner's claim.

9            The Sixth Amendment guarantees to the criminally accused a fair trial by a panel of

10   impartial jurors.  U.S. Const. amend. VI; see Irvin v. Dowd, 366 U.S. 717, 722 (1961).  "Even if

11   only one juror is unduly biased or prejudiced, the defendant is denied his constitutional right to

12   an impartial jury."  Tinsley v. Borg, 895 F.2d 520, 523-24 (9th Cir. 1990) (internal quotations

13   omitted).  However, clearly established federal law, as determined by the Supreme Court, does

14   not require state or federal courts to hold a hearing every time a claim of juror bias is raised by

15   the parties.  Tracey v. Palmateer, 341 F.3d 1037, 1045 (9th Cir. 2003).  The Ninth Circuit has

16   recognized that to disqualify a juror for cause requires a showing of actual bias or implied bias,

17   that is "bias in fact, or bias conclusively presumed as a matter of law."  United States v.

18   Gonzalez, 214 F.3d 1109, 1111-12 (9th Cir. 2000).  The Constitution "does not require a new

19   trial every time a juror has been placed in a potentially compromising situation."  Smith v.

20   Phillips, 455 U.S. 209, 217 (1982).  Due process only means a jury capable and willing to decide

21   the case solely on the evidence before it and a trial judge ever watchful to prevent prejudicial

22   occurrences and to determine the effect of such occurrences when they happen.  Id.

23          The Ninth Circuit has identified three theories of juror bias: (1) McDonough-style bias

24   (i.e., juror fails to answer honestly and, had he answered correctly, the information would have

25   provided a basis for a challenge for cause, see McDonough Power Equip., Inc. v. Greenwood,

26   464 U.S. 548 (1984)), (2) "actual bias, which stems from a pre-set disposition not to decide an

27   issue impartially," and (3) "implied (or presumptive) bias, which may exist in exceptional

28   circumstances where, for example a prospective juror has a relationship to the crime itself or to

someone involved in a trial, or has repeatedly lied about a material fact to get on the jury."
Fields v. Brown, 503 F.3d 755, 766 (9th Cir. 2007) (en banc).

Petitioner assumes that because the alternate juror knew the prosecutor's investigator, she was actually or impliedly biased. He does not claim that the juror had a McDonough-style bias. Here, there is no indication that the juror gave any opinion that she had a predisposition to decide the case one way or the other. In fact, she answered that she could be fair and impartial despite her familiarity with the investigator. (RT 2311.) Moreover, there is no indication that she had an implied bias. The record simply contains no evidence to suggest that the juror's relationship with the investigator made her incapable or unwilling to decide the case solely on the evidence presented at trial. See McDonough, 464 U.S. at 554; see also United States v. Gonzalez, 214 F.3d 1109, 1112 n.3 (9th Cir. 2000) (although not dispositive, "significant weight [is given] to a juror's definitive statement that he can serve impartially[ ]").

Moreover, petitioner raised no claim of bias prior to trial and the court was unaware petitioner had any issue with the juror until after the parties had rested their cases. Further, even assuming there was error, any error was harmless. See Sims v. Rowland, 414 F.3d 1148, 1153 (9th Cir. 2005) ("[N]o Supreme Court precedent holds that a failure to investigate potential juror bias presents structural error[.]"). Petitioner has failed to demonstrate that questioning this juror further about whether she could be impartial despite her familiarity with the prosecutor's investigator would have produced a different answer. Petitioner cannot show that conducting a hearing to determine partiality would have uncovered some evidence of bias. Finally, even if the juror was in fact biased, petitioner's trial could not have been fundamentally unfair because she did not participate in the deliberations. In sum, petitioner has failed to show that the state courts' conclusion that there was no juror misconduct was not contrary to, or an unreasonable application of clearly established federal law. See 28 U.S.C. § 2254(d).

3.   Ineffective Assistance of Trial Counsel

Petitioner claims that counsel rendered ineffective assistance when he: (a) failed to investigate by not following up on Lernhart's initial investigation, not obtaining and presenting witnesses, and not calling an expert; (b) failed to excuse a juror for cause, and (c) failed to

1    investigate Lernhart's conflict of interest.

2          The Superior Court denied this claim in petitioner's state habeas petition in very general

3    terms.  (Resp. Ex. 9 Ex. 3.)

4          A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth

5    Amendment right to counsel, which guarantees not only assistance, but effective assistance of

6    counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  The benchmark for judging any

7    claim of ineffectiveness must be whether counsel's conduct so undermined the proper

8    functioning of the adversarial process that the trial cannot be relied upon as having produced a

9    just result.  Id.  In order to prevail on a Sixth Amendment ineffectiveness of counsel claim,

10   petitioner must establish two things.  First, he must establish that counsel's performance was

11   deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing

12   professional norms.  Id. at 687-88.  Second, he must establish that he was prejudiced by

13   counsel's deficient performance, i.e., that "there is a reasonable probability that, but for

14   counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at

15   694.  A reasonable probability is a probability sufficient to undermine confidence in the

16   outcome.  Id.

17                    (a)     Failure to investigate

18         Petitioner alleges that counsel failed to follow up on Lernhart's initial investigations.

19   (Pet. Memo at 17-18.)  He claims that the initial investigations had the "potential for impacting"

20   the case.  (Id. at 18.)  Petitioner also claims that counsel failed to use M's mental health records

21   to impeach her and failed to present an expert witness to refute the prosecution's expert witness

22   on Child Sexual Abuse Accommodation Syndrome.  (Id.)  Petitioner further argues that counsel

23   failed to hire an expert to examine the photographic evidence that M gave to a police investigator

24   of a man's torso in order to conclude that the torso did not depict petitioner's.  (Id.)  Finally,

25   petitioner challenges counsel's decision not to present witnesses to impeach M's testimony and

26   create doubt in the prosecutor's theory of the case.  (Id. at 18-19.)

27         A defense attorney has a general duty to make reasonable investigations or to make a

28   reasonable decision that makes particular investigations unnecessary.  See Strickland, 466 U.S.

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.08\Royal5628hc.wpd            9

at 691.  A habeas petitioner has the burden of showing through evidentiary proof that counsel's performance was deficient.  See Toomey v. Bunnell, 898 F.2d 741, 743 (9th Cir. 1990); see also Rios v. Rocha, 299 F.3d 796, 813 n.23 (9th Cir. 2002) (rejecting two ineffective assistance of counsel claims based on petitioner's failure to produce evidence of prejudice).

    Here, the record demonstrates that counsel and his investigator intended to follow-up with portions of Lernhart's initial investigation after meeting with Lernhart.  (RT 607, CT 130-138.)  In a motion to continue the trial date, counsel described the general state of the investigation, and pinpointed specific areas in which he needed additional time to research.  (CT 130-138.)  At the hearing on the motion to continue, counsel clearly indicated that he had discussed the case with Lernhart and, after reviewing the extensive discovery by defense investigator Ghiringhelli, the theory of defense was going to be that the victim engaged in a lifestyle that would impeach the prosecution's theory that the victim engaged in sexual activities with defendant because she was under duress.  (CT 131.)  Further, counsel intended to demonstrate that the victim was engaged in a pattern of behavior that spanned her teenage years.  (RT 657-658.)  At the hearing, counsel explained why he was requesting yet another continuance, and stated that the case was a "very he said, she said case.  Anything that a defense attorney can do to assist the trier of fact in deciding who's accurate and who's inaccurate, is the only way to try this case."  (RT 658.)  In his traverse, petitioner argues that even though counsel stated in his motion that he intended to follow-up on certain items, he did not.  (Traverse at 5-6.)  However, petitioner fails to specify what evidence counsel failed to uncover and why the failure to uncover it was objectively unreasonable.

    A habeas petitioner cannot simply allege ineffective assistance of counsel without evidence to support his allegations.  See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Additionally, "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").  Even if counsel opted not to follow up on portions of Lernhart's initial investigation, petitioner fails to demonstrate that this decision fell below an "objective standard of reasonableness" under

1    prevailing professional norms.  Strickland, 466 U.S. at 687-88.  For example, the record shows

2    that counsel asked both M and her mother about M's specific hospitalizations as a child (RT

3    1000-1003, 1174-1178), contrary to petitioner's assertion that counsel failed to obtain "the

4    extensive out-of-state medical and mental health records."  Petitioner does not explain what

5    other mental health records or evidence counsel should have obtained.  Thus, petitioner has not

6    met his burden to overcome the strong presumption that counsel's actions are reasonable.  See

7    id. at 689.

8        Petitioner also claims that counsel failed to call certain witnesses to refute the

9    prosecution's case.  (Pet. Memo at 18-19.)  Petitioner asserts that the only witnesses counsel put

10   on the stand were witnesses already discovered by Lernhart.  (Id. at 6.)  The duty to investigate

11   and prepare a defense does not require that every conceivable witness be interviewed.  Hendricks

12   v. Calderon, 70 F.3d 1032, 1040 (9th Cir. 1995).  When the record shows that the lawyer was

13   well-informed and the defendant fails to state what additional information would be gained by

14   the discovery he now claims was necessary, an ineffective assistance claim fails.  Eggleston v.

15   United States, 798 F.2d 374, 376 (9th Cir. 1986).   A defendant's mere speculation that a witness

16   might have given helpful information if interviewed is not enough to establish ineffective

17   assistance.  See Bragg v. Galaza, 242 F.3d 1082, 1087 (9th Cir.), amended, 253 F.3d 1150 (9th

18   Cir. 2001).  Here, petitioner fails to demonstrate that any potential witness was likely to have

19   been available to testify, was willing to testify, would have given the proffered testimony, and

20   that such testimony would have created a reasonable probability that the jury would have

21   reached a more favorable verdict.  See Alcala v.  Woodford, 334 F.3d 862, 872-73 (9th Cir.

22   2003).

23       Finally, petitioner claims that counsel should have called an expert witness to refute the

24   prosecution's expert on Child Sexual Abuse Accommodation Syndrome and to analyze the

25   photographs of an unknown male's torso.  (Pet. Memo at 18.)  Where the evidence does not

26   warrant it, the failure to call an expert does not amount to ineffective assistance of counsel.  See

27   Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999) (a decision not to pursue testimony by a

28   psychiatric expert is not unreasonable when the evidence does not raise the possibility of a

1  strong mental state defense).  Here, counsel made a reasonable decision to cross-examine the

2  prosecution's expert witness on Child Sexual Abuse Accommodation Syndrome in order to cast

3  doubt on the prosecutor's theory of the case regarding duress.  (RT 978-994.)  In addition,

4  petitioner does not demonstrate how or why an expert was necessary to analyze the photographs.

5  There is no evidence that an expert could evaluate the photographs any differently than a juror.

6  Moreover, counsel argued at closing that the photographs were not conclusive as to the identity

7  of the male torso and that M's appearance in the photograph did not look like someone who had

8  been awake for three days while high on crystal meth.  See Caro v. Calderon, 165 F.3d 1223,

9  1227 (9th Cir. 1999) (recognizing that expert testimony is necessary when the evidence cannot

10  be fairly evaluated by a layperson); cf. Matylinsky v. Budge, 577 F.3d 1083, 1093 (9th Cir.

11  2009) (finding no prejudice where defense attorney cross-examined prosecution's witness

12  sufficiently to make credibility an issue before the jury even though additional investigation

13  could have unearthed more impeaching evidence).

14      Accordingly, the state courts' conclusion rejecting petitioner's claim was not contrary to,

15  or an unreasonable application of clearly established federal law.  See 28 U.S.C. § 2254(d).

16              (b)      Failure to strike juror for cause

17      Petitioner claims that because the alternate juror was familiar with the prosecution's

18  investigator, prejudice must be presumed.  (Pet. Memo at 21.)  Petitioner argues that even though

19  counsel had no more peremptory challenges left, he should have challenged the juror for cause.

20  (Traverse at 10.)  "It was the fact that [defense counsel] did not attempt to remove this person

21  which results in prejudice to the Petitioner."  (Id.)

22      Petitioner is mistaken.  To succeed on an ineffective assistance of counsel claim, the

23  defendant must show that counsel's errors were so serious as to deprive the defendant of a fair

24  trial, a trial whose result is reliable.  Strickland, 466 U.S. at 688.  Where the defendant is

25  challenging his conviction, the appropriate question is "'whether there is a reasonable probability

26  that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'"  Luna

27  v. Cambra, 306 F.3d 954, 961 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 695).

28      Here, petitioner concedes that the trial court may or may not have allowed counsel to

1  strike the juror for cause.  (Traverse at 10.)  Moreover, trial counsel cannot have been ineffective

2  for failing to raise a meritless motion.  <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1273 (9th Cir. 2005);

3  <u>see, e.g.</u>, <u>Hebner v. McGrath</u>, 543 F.3d 1133, 1137 (9th Cir. 2008) (finding counsel's failure to

4  object to admission of defendant's prior sexual misconduct as propensity evidence not

5  ineffective where evidence would have been admitted in any event to show common plan or

6  intent); <u>see also</u> <u>Wilson v. Henry</u>, 185 F.3d 986, 990 (9th Cir. 1999) (to show prejudice under

7  <u>Strickland</u> from failure to file a motion, petitioner must show that (1) had his counsel filed the

8  motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the

9  motion been granted, it is reasonable that there would have been an outcome more favorable to

10  him).  Here, not only has petitioner not demonstrated that even if counsel had attempted to strike

11  the juror for cause, that the trial court would have permitted it, but he also cannot show that even

12  if the juror was had been stricken prior to trial, that any outcome would have been more

13  favorable to him.  <u>See</u> <u>id.</u>

14      Accordingly, the state courts' conclusion rejecting petitioner's claim was not contrary to,

15  or an unreasonable application of clearly established federal law.  <u>See</u> 28 U.S.C. § 2254(d).

16              (c)    <u>Failure to investigate conflict of interest</u>

17      Finally, petitioner alleges that counsel was ineffective for failing to research former

18  counsel Lernhart's conflict of interest.  Specifically, petitioner claims that counsel should have

19  investigated the circumstances around which Lernhart believed he had to withdraw due to a

20  conflict of interest with a potential prosecution witness.

21      Petitioner again presents a wholly conclusory allegation for which there can be no habeas

22  relief.  <u>See</u> <u>James</u>, 24 F.3d at 26.  Moreover, there is a complete absence of evidence that had

23  counsel investigated this conflict of interest claim, "the result of the proceeding would have been

24  different."  <u>Strickland</u>, 466 U.S. at 694.

25      Accordingly, the state courts' decision denying this claim was not unreasonable.

26      4.    <u>Denial of Substitution of Counsel</u>

27      Petitioner asserts that the trial court erred in denying his motion for substitution of

28  counsel to request a new trial on the ground that trial counsel was ineffective.  Specifically,

1    during the Marsden[2] hearing, petitioner stated that his complaints were: (1) that counsel "did not

2    have all the material needed to defend my case such as mislabel case laws [sic] and had asked

3    the district attorney . . . for help on such matters;" (2) he felt that counsel was overwhelmed due

4    to counsel's statements regarding the complexity of the case; (3) he believed that counsel

5    conducted an inadequate investigation because counsel had to terminate one investigator and hire

6    a different one a few weeks before trial started; (4) counsel ignored petitioner's requests to ask

7    certain questions; and (5) counsel asked petitioner's mother to take notes during trial and had

8    asked her intermittently if she believed he should ask additional questions.  (RT 2608-2609.)

9         The California Supreme Court summarily denied this claim.

10        The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment

11   right to counsel and is properly considered in federal habeas.  Bland v. California Dep't. of

12   Corrections, 20 F.3d 1469, 1475 (9th Cir. 1994), overruled on other grounds by Schell v. Witek,

13   218 F.3d 1017 (9th Cir. 2000) (en banc).  The Ninth Circuit has held that when a defendant

14   voices a seemingly substantial complaint about counsel, the trial judge should make a thorough

15   inquiry into the reasons for the defendant's dissatisfaction.  Id. at 1475-76; Hudson v. Rushen,

16   686 F.2d 826, 829 (9th Cir. 1982).  The inquiry need only be as comprehensive as the

17   circumstances reasonably would permit.  King v. Rowland, 977 F.2d 1354, 1357 (9th Cir. 1992)

18   (record may demonstrate that extensive inquiry was not necessary).   A federal habeas court

19   considers whether the trial court's denial of or failure to rule on the motion "actually violated

20   [petitioner's] constitutional rights in that the conflict between [petitioner] and his attorney had

21   become so great that it resulted in a total lack of communication or other significant impediment

22   that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth

23   Amendment."  Schell v. Witek, 218 F.3d 1017, 1026 (9th Cir. 2000) (en banc).  In determining

24   whether the trial judge should have granted a substitution motion, the reviewing habeas court

25   may consider the extent of the conflict, whether the trial judge made an appropriate inquiry into

26

27        [2]People v. Marsden, 2 Cal. 3d 118 (1970), requires the trial court to permit a criminal
     defendant requesting substitution of counsel to specify the reasons for his request and generally

28   to hold a hearing.  This California rule substantially parallels the one prescribed by the Ninth
     Circuit in Hudson v. Rushen.  See Chavez v. Pulley, 623 F. Supp. 672, 687 n.8 (E.D. Cal. 1985).

1   the extent of the conflict, and the timeliness of the motion to substitute counsel.  <u>Daniels v.</u>

2   <u>Woodford</u>, 428 F.3d 1181, 1197-98 (9th Cir. 2005) (noting that test for determining whether

3   court should have granted substitution motion is same as test for determining whether an

4   irreconcilable conflict existed).

5          Here, there is no indication that counsel and petitioner had a complete breakdown in

6   communication.  <u>See id.</u> at 1198.  Petitioner does not allege, and the record does not reveal that

7   petitioner and counsel were embroiled in an irreconcilable conflict.  Moreover, a defendant has

8   no right to be represented by independent counsel at the hearing on his motion to substitute

9   counsel if his counsel does not take a position antagonistic to the client's.  <u>See</u> <u>Stenson v.</u>

10  <u>Lambert</u>, 504 F.3d 873, 888 (9th Cir. 2007) (state court did not unreasonably apply Supreme

11  Court precedent in rejecting claim of right to independent counsel at hearing on motion for new

12  counsel; lines of communication remained open between defendant and second chair attorney,

13  and appointed counsel never stopped preparing for trial and never abandoned client).

14         Based upon a review of the underlying record, the court finds that the state court's

15  rejection of petitioner's <u>Marsden</u> claim was neither contrary to nor an unreasonable application

16  of clearly established Supreme Court precedent, nor was it based on an unreasonable

17  determination of the facts in light of the evidence presented.  <u>See</u> 28 U.S.C. § 2254(d).

18  Accordingly, petitioner is not entitled to habeas relief on this claim.

19         5.      <u>Ineffective Assistance of Appellate Counsel</u>

20         Petitioner claims that appellate counsel rendered ineffective assistance of counsel

21  because he failed to raise the above issues on direct appeal.  Petitioner asserts that because

22  appellate counsel failed to raise these issues, they were never "developed for appeal."  (Pet.

23  Memo at 29.)  Petitioner further states that appellate counsel "completely ignored the

24  information given to him," and alleges that appellate counsel should have investigated his

25  "extensive claims of misconduct on the prosecution's part and ineffective assistance of trial

26  counsel."  (Traverse at 13.)

27         The California Supreme Court summarily denied this claim.

28         Claims of ineffective assistance of appellate counsel, although technically due process

1    claims, are reviewed according to the standard set out in <u>Strickland v. Washington</u>, 466 U.S. 668

2    (1984).  <u>See</u> <u>Miller v. Keeney</u>, 882 F.2d 1428, 1433 (9th Cir. 1989).  A defendant therefore must

3    show that counsel's representation did not meet an objective standard of reasonableness and that

4    there is a reasonable probability that, but for counsel's unprofessional errors, he would have

5    prevailed on appeal.  <u>See</u> <u>id.</u> at 1434 & n.9 (citing <u>Strickland</u>, 466 U.S. at 688, 694; <u>U.S. v.</u>

6    <u>Birtle</u>, 792 F.2d 846, 849 (9th Cir. 1986)).

7        It is important to note that appellate counsel does not have a constitutional duty to raise

8    every nonfrivolous issue requested by defendant.  <u>See</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 751-54

9    (1983).  The weeding out of weaker issues is widely recognized as one of the hallmarks of

10   effective appellate advocacy.  <u>See</u> <u>Miller</u>, 882 F.2d at 1434.  Appellate counsel therefore will

11   frequently remain above an objective standard of competence and have caused his client no

12   prejudice for the same reason – because he declined to raise a weak issue.  <u>Id.</u>

13       Petitioner's claim is without merit.  There is no right to an effective assistance of counsel

14   in state habeas proceedings.  <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 755-57 (1991).  Also, as

15   discussed above, there is no merit to petitioner's prosecutorial misconduct and ineffective

16   assistance of trial counsel claims.  Therefore, appellate counsel's failure to raise these issues on

17   appeal could not have resulted in prejudice to petitioner.  Furthermore, because the underlying

18   claims are without merit, the weeding out by appellate counsel may constitute an instance of

19   effective advocacy, as defined in <u>Miller</u>.  In addition, in California, "[w]here the record does not

20   illuminate the basis for the challenged acts or omissions, a claim of ineffective assistance is more

21   appropriately made in a petition for habeas corpus."  <u>People v. Pope</u>, 23 Cal. 3d 412, 426 (1979),

22   <u>overruled on other grounds by</u> <u>People v. Berryman</u>, 6 Cal. 4th 1048, 1081 n.10 (1993).  Thus,

23   this claim is denied.

24       6.    <u>Improper Admission of Propensity Evidence</u>

25       At trial, the prosecution introduced evidence that petitioner had raped Melia once, and in

26   1986, he was convicted of sexual abuse of another female in New York.  (Pet. Ex. A at 10.)

27   Petitioner claims that although California Evidence Code § 1108 allows for the admission of

28   evidence of prior sex acts, the evidence should have been excluded because it was more

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability

1   prejudicial than probative.  Petitioner alleges that the evidence, in combination with CALJIC No.

2   2.50.01, which allows the jury to infer that petitioner had a predisposition to commit the crimes,

3   violated his right to due process and lowered the prosecution's burden of proof.

4          The California Court of Appeal rejected petitioner's claim.  (Pet. Ex. A.)

5          Habeas relief is available only when the state court's adjudication resulted in a decision

6   that was contrary to, or involved an unreasonable application of, clearly established federal law,

7   as determined by the Supreme Court.  See 28 U.S.C. § 2254(d).  As the Ninth Circuit has noted,

8   "the Supreme Court has never expressly held that it violates due process to admit other crimes

9   evidence for the purpose of showing conduct in conformity therewith, or that it violates due

10  process to admit other crimes evidence for other purposes without an instruction limiting the

11  jury's consideration of the evidence to such purposes. Indeed, the Supreme Court has expressly

12  declined to answer these questions."  Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001)

13  (citing Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991) ("express[ing] no opinion on whether a

14  state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence

15  to show propensity to commit a charged crime"), overruled on other grounds by 538 U.S. 202

16  (2003).

17         Because the Supreme Court has expressly declined to answer these questions, this court

18  cannot say that, in the instant case, the state appellate court acted in an objectively unreasonable

19  manner in admitting evidence of petitioner's prior sexual offenses.  See Larson v. Palmateer, 515

20  F.3d 1057, 1066 (9th Cir. 2008) (stating that, "[b]ecause the [Supreme] Court has expressly left

21  this issue an open question, the state court did not unreasonably apply clearly established federal

22  law in determining that the admission of evidence of Larson's criminal history did not violate

23  due process"); see also Sullivan v. Campbell, No. C 06-2725 MHP (PR), 2008 WL 4287822, at

24  *10 (N.D. Cal. Sept. 17. 2008) Cata v. Garcia, No. C 03-3096 PJH (PR), 2007 WL 2255224, at

25  *13 (N.D. Cal. Aug.3, 2007); Darn v. Knowles, No. C 02-2892 SI (PR), 2003 WL 21148412, at

26  *10 (N.D. Cal. May 14, 2003); cf. Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009)

27  (recognizing that because the Supreme Court "has not yet made a clear ruling that admission of

28  irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant

issuance of the writ," federal courts cannot conclude a state court's admission of "even clearly erroneous admissions of evidence that render a trial fundamentally unfair" is an unreasonable application of clearly established federal law).

With respect to petitioner's claim that CALJIC No. 2.50.01 lowered the prosecution's burden of proof, the court disagrees. The relevant portion of CALJIC No. 2.50.01 states:

> If you find that the defendant committed a prior sexual offense you may but are not required to infer that the defendant had a disposition to commit sexual offenses. If you find that the defendant had this disposition you may but are not required to infer that he was likely to commit and did commit the crimes of which he is accused.

> However, if you find by a preponderance of the evidence that the defendant committed a prior sexual offense that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes in this case. If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider along with all the other evidence in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crimes.

(Pet. Ex. A at 13.)

The California Court of Appeal rejected this claim, stating, "the Supreme Court approved a nearly identical instruction in <u>People v. Reliford</u> (2003) 29 Cal.4th 1007." (Pet. Ex. A at 13.) The jury was also instructed, "If you find other crimes were committed by a preponderance of the evidence, you are nevertheless cautioned and reminded once again that before a defendant can be found guilty of any crime charged the evidence as a whole must persuade you beyond a reasonable doubt that the defendant is guilty of the charged crimes." (<u>Id.</u>) Given such specific mandates, it is not reasonably likely that the jury might believe it could convict on merely a preponderance standard.

Accordingly, the court concludes that the state court's decision rejecting this claim was not contrary to, or an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

7.   <u>Insufficient Evidence of Duress</u>

Petitioner claims that there was insufficient evidence of duress to support his convictions for rape, oral copulation, and sexual penetration. He states that at most, there was evidence of psychological pressure, but without the addition of a threat of force or violence, psychological

1  pressure is not enough to constitute "duress."

2      Under California law, the crimes defined in sections 261, 288(a), and 289(a)(1) can be

3  accomplished "by means of force, violence, duress, menace, or fear of immediate and unlawful

4  bodily injury on the victim or another person." "Duress," is "a direct or implied threat of force,

5  violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary

6  susceptibilities to . . . perform an act which otherwise would not have been performed or . . .

7  acquiesce in an act to which one otherwise would not have submitted." People v. Pitmon, 170

8  Cal. App. 3d 38, 50 (1985).  The totality of the circumstances are considered, including the age

9  of the victim, the familial relationship between the victim and the perpetrator, and the disparity

10 in size between the victim and the perpetrator.  People v. Cochran, 103 Cal. App. 4th 8, 14

11 (2002).

12     The state appellate court rejected petitioner's claim that there was insufficient evidence

13 to support a finding of duress.  Specifically, the state court rejected petitioner's argument that

14 psychological coercion was not enough to demonstrate duress.  (Pet. Ex. A at 15-16.)  The court

15 noted that in Cochran, 103 Cal. App. 4th at 15, the appellate court rejected such an argument,

16 stating, "the very nature of duress is psychological coercion.  A threat to a child of adverse

17 consequences, such as suggesting the child will be breaking up the family or marriage if she

18 reports or fails to acquiesce in the molestation, may constitute a threat of retribution and may be

19 sufficient to establish duress, particularly if the child is young and the defendant is her parent."

20 The state court then analyzed the evidence in the underlying cases and concluded that there was

21 evidence that petitioner isolated M, began molesting her when she was 12-years old, threatened

22 to kill himself if M left or reported the abuse, and threatened to "disown" her if she told anyone.

23 (Pet. Ex. A at 17.)  Expert testimony corroborated a finding that these threats, combined with the

24 fact that petitioner and M had a father-daughter relationship, "created an environment in which

25 M felt compelled to comply with defendant's demands."  (Id. at 18.)  The state court concluded,

26 "there was substantial evidence of duress and a reasonable trier of fact could have concluded that

27 M participated in the charged sexual acts because of fear that harm would come to her if she did

28 not comply with defendant's demands."  (Id. at 19.)

1    Petitioner's claim is without merit.  First, petitioner's claim that the definition of duress

2    was incorrect fails.  This court must defer to a state court's interpretation of its own laws.  See

3    Bradshaw v. Richey, 546 U.S. 74, 76 (2005)  (holding that a state court's interpretation of state

4    law, including one announced on direct appeal of the challenged conviction, binds a federal court

5    sitting in habeas corpus).  Second, the record contains sufficient evidence on which a reasonable

6    trier of fact could have found evidence of duress.  At the time of the offense, M was twelve years

7    old, and defendant was her father.  She left her mother's house where she had been physically

8    disciplined by her step-father to live with defendant, whom she barely knew.  M testified that she

9    was afraid when defendant approached her with sexual intentions and repeatedly told him he did

10    not want to have sex with him.  She also testified that defendant threatened suicide and told her

11    that she would "lose [her] daddy" if she told anyone.  Viewing the evidence in the light most

12    favorable to the prosecution, a rational trier of fact could have found that M's acquiescence was

13    due at least in part to an implied threat of danger or hardship.  See Jackson v. Virginia, 443 U.S.

14    307, 324 (1979). This claim does not provide grounds for habeas relief.

15        8.    Cumulative Error

16    Petitioner claims that as a result of all his allegations, the cumulative effect of the alleged

17    errors rises to the level of prejudicial error.  In some cases, although no single trial error is

18    sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still

19    prejudice a defendant so much that his conviction must be overturned.  See Alcala v. Woodford,

20    334 F.3d 862, 893-95 (9th Cir. 2003) (reversing conviction where multiple constitutional errors

21    hindered defendant's efforts to challenge every important element of proof offered by

22    prosecution).  However, where as here, there is no single constitutional error existing, nothing

23    can accumulate to the level of a constitutional violation.  See Mancuso v. Olivarez, 292 F.3d

24    939, 957 (9th Cir. 2002).

25        **CONCLUSION**

26    For the reasons set forth above, the court concludes that petitioner has failed to show a

27    violation of his federal constitutional rights in the underlying state criminal proceedings.

28    Accordingly, the petition for writ of habeas corpus is DENIED.  The clerk shall terminate all

1   pending motions and close the file.

2          The federal rules governing habeas cases brought by state prisoners have recently been

3   amended to require a district court that denies a habeas petition to grant or deny a certificate of

4   appealability ("COA") in its ruling.  See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C.

5   foll. § 2254 (effective December 1, 2009).  For the reasons set out in the discussion above,

6   petitioner has not shown "that jurists of reason would find it debatable whether the petition states

7   a valid claim of the denial of a constitutional right [or] that jurists of reason would find it

8   debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel,

9   529 U.S. 473, 484 (2000).  Accordingly, a COA is DENIED.

10          IT IS SO ORDERED.

11
    DATED: _____   10/4/10

12                                          RONALD M. WHYTE
                                            United States District Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.08\Royal5628hc.wpd        21